Raphael JOHNSON, Ida JOHNSON, and Robert
JOHNSON *v.* STATE of Arkansas

CR 86-159                                    724 S.W.2d 160

Supreme Court of Arkansas
Opinion delivered February 23, 1987
[Rehearing denied March 23, 1987.]

*Stephen E. James, P.A.*, for appellants.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. Raphael, Ida and Robert Johnson seek reversal of their convictions for manufacturing marijuana because of the admission into evidence at trial of marijuana they contend was illegally seized from their property. The Johnsons also contend that they were prejudiced by the police's pretrial handling and disposal of the marijuana. We find no merit in the Johnsons' arguments and affirm.

Police testified at a suppression hearing and later at trial that the discovery and subsequent seizure of marijuana on the Johnsons' property occurred in the following manner. Following an informant's tip that marijuana was being grown on the ten acres surrounding the Johnsons' residence, the police planned a helicopter inspection of the property. Prior to the arrival of the helicopter, two law enforcement officers were driving by the property on a public road and spotted Raphael Johnson carrying seven stalks of marijuana cradled in his arms. The officers said they were driving 15 to 20 miles per hour and that Raphael was only 25 to 30 feet away. Raphael began walking faster toward a barn after he realized he had been seen. The officers then drove onto the property, followed Raphael on foot through the barn, and arrested him, now empty-handed, about 50 yards behind the barn.

After Raphael was arrested, the officers heard a tractor start up and turned to see Raphael's son, Robert Johnson, 50 to 75 yards away, mowing down what looked like marijuana plants. Robert was also arrested.

The officers testified that the Johnsons orally consented to a search of the premises at that time, although the testimony as to which officer received the consent was unclear and the Johnsons denied consenting. The Johnsons were taken to the police station where Raphael signed a permission to search form. The space on the form for the property location was left blank. According to the officers, 1015 marijuana plants, including the seven stalks found in the barn, were seized after the consent form was signed. Random samples were saved for testing and the remainder was burned without a court order.

The trial court ruled that the state could introduce all evidence of the marijuana found in the barn and growing on the property, including police testimony, photographs, and the samples which tested positive for marijuana, but excluded any evidence found in an accompanying search of the Johnsons' house and vehicles. Raphael was sentenced to four years imprisonment and fined $10,000; Robert was sentenced to ten years and fined $5,000; and Ida Johnson was fined $2,000. The trial court's rulings were correct.

■■ All searches conducted without a valid warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant. *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971). The Johnsons contend that the search was invalid because the police had no warrant and no exception to the warrant requirement applies. We disagree. The officers witnessed Raphael Johnson carrying seven freshly-cut marijuana stalks across his yard, clearly giving them reasonable cause to believe he was committing a felony and thereby authorized them to arrest Johnson without a warrant. A.R.Cr.P. Rule 4.1(a)(i). At that time, the officers were on a public road and Johnson was in public view, making it permissible to enter the premises and pursue him to make the arrest. *United States* v. *Santana*, 427 U.S. 38 (1976).

■ From the vantage point where Raphael Johnson was arrested, the growing marijuana was clearly visible to the officers. The observation of evidence in plain view is not a search and therefore the resulting seizure is not the result of an unreasonable search. *Kelley* v. *State*, 261 Ark. 31, 545 S.W.2d 919 (1977); A.R.Cr.P. Rule 14.4. "The basic test is whether the officer had a

right to be in the position he was when the objects fell into his plain view." *Kelley, supra.* The officers obviously had a right to be on the public road, and, as stated, had a right to enter the property to make the arrest, bringing the marijuana into view.

■ The Johnsons argue that this situation does not satisfy the plain view exception's three-prong test. That test permits the admission of seized evidence only when 1) the initial intrusion was lawful, 2) the discovery of the evidence was inadvertent, and 3) the incriminating nature of the evidence was immediately apparent. *McQueen* v. *State*, 283 Ark. 282, 675 S.W.2d 358 (1984); *Coolidge, supra.* The Johnsons question the inadvertence of the police discovery, since the officers were setting up a surveillance for marijuana when Raphael was spotted. Regardless of why the police were driving by the property, however, no intrusion at all had occurred before the marijuana was first seen. To hold that police cannot seize marijuana that is in plain view from the highway and later after they have made unquestionably valid arrests would place too much emphasis on the inadvertence requirement.

■■ The real concern expressed in *Coolidge* was with "a planned warrantless seizure." *Id.*, at p. 471, fn. 27. The inadvertence requirement has generally been interpreted to mean that "immediately prior to the discovery, the police lacked sufficient information to establish probable cause to obtain a warrant to search for the object." *State* v. *Cote*, 126 N.H. 514, 493 A.2d 1170 (1985); LaFave, *Search and Seizure*, § 6.7(c) (2d ed. 1987). Inadvertence does not "encompass total surprise" or mean "unexpected." *State* v. *McCurry*, 587 S.W.2d 337 (Mo. App. 1979); *State* v. *Preston*, 583 S.W.2d 577 (Mo. App. 1979). It is absurd to believe that the officers planned in advance to see Johnson walking on this property near the highway carrying an armful of marijuana, use that as a pretext to follow him onto the premises to make the arrest, and at that time seize the marijuana they expected to find there. The fact that the officers had an informant's tip that marijuana could be growing there does not make the sighting of the marijuana "advertent" in these circumstances.

■ The Johnsons contend that they did not consent to the search of their property. The state concedes that the consent to

the search in this case was questionable. Because we hold the seizure of the marijuana was justified on other grounds, however, we need not reach this issue.

The Johnsons also assert a variety of violations by the police in the pretrial handling of the evidence which they contend prejudiced their ability to defend themselves and made the evidence unreliable. Granted, the police violated A.R.Cr.P. Rule 15 by destroying all the marijuana except that saved for testing without first obtaining a court order and making a full report of the circumstances of the seizure and a list of the items seized. To exclude evidence because of a violation of our rules, however, the violation must be "substantial." A.R.Cr.P. Rule 16.2(e). The Johnsons argue this violation was substantial because it prejudiced their ability to defend themselves by denying them the opportunity to examine the plants destroyed to determine their character and quality. The character and quality of the plants would make no difference in a conviction for manufacturing marijuana, when, as here, photographs, officers' testimony and test samples showed overwhelmingly that the plants seized were marijuana. The Johnsons also argue that the police improperly commingled the marijuana found in the barn and the plants growing on the property. Since all the marijuana was properly admissible, there was likewise no prejudice here.

Finally, the Johnsons contest the chain of custody demonstrated for one of the marijuana samples. The officer who sent the bag of marijuana to the lab testified that he marked and taped the bag before it went to the lab and that it returned as marked after testing. The Johnsons' complaint is that the officer did not record the number assigned to the bag until the submission sheet was made after the return of the evidence from the lab. No evidence of tampering, suspicious circumstances or break in the chain of custody was shown by the Johnsons. It is not necessary that every possibility of tampering be eliminated, but only that the trial judge, in his discretion, is satisfied that the evidence presented is genuine and, in all reasonable probability, has not been tampered with. *Munnerlyn* v. *State*, 264 Ark. 928, 576 S.W.2d 714 (1979). The judge did not abuse his discretion in this regard.

Affirmed.