UNITED STATES of America, Appellee,

v.

Larry VENTLING, Appellant.

No. 81–2160.

United States Court of Appeals,
Eighth Circuit.

Submitted May 12, 1982.
Decided May 18, 1982.

Philip N. Hogen, U. S. Atty., Sioux Falls, S. D., Ted L. McBride, Asst. U. S. Atty., Rapid City, S. D., for appellee.

Bangs, McCullen, Butler, Foye & Simmons and Michael M. Hickey, Rapid City, S. D., for appellant.

Before HEANEY, ROSS and ARNOLD, Circuit Judges.

PER CURIAM.

*Facts*

Larry Ventling was charged with two counts of blocking or interfering with the use of a United States Forest Service Road in violation of 36 C.F.R. § 261.12(e). Ventling had a nonjury trial before a magistrate and was convicted. He was sentenced to one year of unsupervised probation and fined $1,000.00. He appeals, alleging as error:

1) the trial court's failure to dismiss one of the citations because it was not properly signed;

2) that the trial court failed to suppress evidence obtained via an illegal search;

3) that the evidence was insufficient to support the conviction;

4) That the trial court erred in refusing to grant Ventling's motion for new trial on the basis of newly discovered evidence.

The events giving rise to Ventling's conviction began on November 1, 1980, when Lee Sutton, a United States Forest Service employee, discovered roadblocks composed of several large boulders which had been erected on Forest System Roads 308 and 308.1B. On November 2, United States Forest Service Special Agent Gary Qualls investigated the blockade sites in an attempt to determine who had erected the blockades. Qualls observed tractor tire tracks at intermittent intervals between the two blockades and a continuous set of tracks leading from the blockade nearest the Ventling residence to the Ventling driveway. The Ventling residence was the closest to the site of the blockades. Qualls drove into the driveway and went to the front door of the Ventling home. He noticed more tire tracks in the yard and further up the yard he saw a tractor equipped with a backhoe and a front-end loader. At the time the tractor was partially obscured by a truck which was parked next to it. After a brief conversation with a woman he presumed to be Mrs. Ventling, Qualls was denied permission to inspect the tractor tires and asked to leave the premises. As he was leaving the yard Qualls stopped to photograph some tractor tracks along the side of the driveway. Mrs. Ventling objected and again instructed Qualls to leave, which he did. Qualls obtained a search warrant based on the following information:

1) his observation of tractor tracks with an alternating hooked chevron pattern at the blockade site;

2) the fact that the Ventling residence is the closest to the site of the blockades;

3) his observation of tractor tracks of an identical pattern upon entering the Ventling drive;

4) the refusal by a woman at the Ventling residence to permit him to examine a tractor parked in the yard.[1]

The warrant was executed November 5. No physical evidence was seized, but the photographs which were taken and the observations made by Qualls and Sutton were the subjects of a motion to suppress, which was denied.

*Discussion*

A. Unsigned Violation Notice

■ Ventling's first contention of error on appeal is that the magistrate erred in failing to dismiss Violation Notice G10572 on the ground that it had not been signed nor certified by an officer prior to trial. The trial court held that this failure was a mere clerical error and denied a motion to dismiss based on this omission. The district court affirmed the denial on the ground that the Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates require that a citation be verified only where the defendant fails to appear and a warrant is required and that since Ventling appeared voluntarily he was in no way prejudiced.

On appeal he urges that the refusal to dismiss the unsigned violation notice contravenes Rules 3 and 7 of the Federal Rules of Criminal Procedure in that an information must be signed by an attorney for the government and that a complaint must be sworn before a magistrate.

Ventling's objection to the unsigned violation notice is predicated upon the assumption that it does not significantly differ in importance from a warrant or summons. While the purpose of all three procedures is to secure the appearance of the defendant there are some basic differences. Upon failure to comply with the violation notice a

defendant is not subject to the same consequences as he would for a failure to respond to a warrant or summons. Despite the suggestion in appellant's brief that he was "seized," the record appears to indicate that he appeared before the magistrate voluntarily. Had Ventling not appeared, the government would have been required to comply with the requirements of Rule 4 of the Rules for the Trial of Minor Offenses Before United States Magistrates before a warrant could issue. *See* 8B Moore's Federal Practice and Procedure, § App. 4.00 at App. 51 (2d ed. 1981). It does not appear from the circumstances of this case that Ventling was in any way harmed by the omission of a signature on the violation.

B. Validity of the Search

Ventling advances a two-tiered argument in which he maintains that the photographs taken and Qualls' observations made on his initial visit to the Ventling residence should be suppressed because they were made within the protected curtilage area of the residence and that the search warrant was defective in that it was based on misrepresentations by special agent Qualls.

Ventling maintains that the photographs and observations made were within the curtilage area and should be suppressed since he had a reasonable expectation of privacy for that area. He argues that this expectation was further reinforced by the fact that he had clearly posted the entrance of his driveway with no trespassing signs. The transcript reveals conflicting testimony as to the placement of the signs and their degree of obviousness. Ventling testified that the signs were posted on his property and were immediately noticeable to anyone entering the drive. Sutton testified that some signs had been posted on Forest Service property near the entrance to Ventling's drive and that he had removed them. The trial court found and the district court agreed that the signs were posted on Forest Service property and not particularly di-

---

1. The appellant has failed to include the affidavit in support of the warrant as a part of this record. The facts shown to have been alleged in the affidavit are as stated in appellant's brief.

rected towards Ventling's drive. The trial court stated:

The driveway from Road 308 leading to the Ventling buildings is similar to most rural farmsteads in the Black Hills. It provides access to and from the public highway for the occupants and their invitees and members of the public contacting the occupants for business or social purposes and for police or fire protection. The absence of a closed or blocked gate in this country creates an invitation to the public that a person can lawfully enter along the driveway during daylight hours to contact the occupants for a lawful request and if the request is refused to leave by the same way. The presence of "no trespassing" signs in this country without a locked or closed gate make the entry along the driveway for the purposes above described not a trespass and therefore does not constitute an intrusion prohibited by the Fourth Amendment. Therefore, the Court finds that the driveway is not "protected curtilage" under these circumstances and that the photographs taken by Agent Qualls of the tire prints immediately adjacent and in plain view of the driveway were admissible.

Magistrate's Memorandum Opinion at 2. The district court agreed.

■ The standard for determining when the search of an area surrounding a residence violates fourth amendment guarantees no longer depends on outmoded property concepts, but whether the defendant has a legitimate expectation of privacy in that area. *United States v. John Bernard Industries*, 589 F.2d 1353, 1362 (8th Cir. 1979).

■ Ventling's assertions of expectations of privacy with regard to the driveway and yard seem unreasonable under the circumstances here. We have in some instances found such expectations reasonable with regard to property located out of public view on a defendant's land. *United States v. Knotts*, 662 F.2d 515, 518 (8th Cir. 1981). However, a driveway and portion of the yard immediately adjacent to the front door of the residence can hardly be considered out of public view. *See* W. LaFave, Search & Seizure § 2.3 (1978). The extension of Ventling's expectations of privacy to the driveway and that portion of the yard in front of the house do not, under these circumstances, appear reasonable.

■ Ventling also charges that the warrant was not based on probable cause because of a misrepresentation made by agent Qualls in the application for a warrant. He contends that Qualls, in his affidavit, suggested that he saw the rear tires on the tractor on November 2 and that he testified at trial that he did not observe the tires on the tractor on that date. A copy of the affidavit does not appear in the record, however, according to appellant's brief agent Qualls relied upon the following facts, among others:

1. Qualls' observations of tractor tracks with an alternating hooked chevron pattern;

2. the home closest to the location of the boulders is that of the defendant;

3. upon entry to the driveway of the defendant's residence, his observation of tractor tracks of the same pattern; and

4. the refusal by a woman at the Ventling residence to allow him to examine a tractor that was parked in the yard.

As for Qualls' testimony, it appears that Ventling refers to the following exchange:

Q Is that the way the tractor observed—appeared to you on the 2nd when you were there.

A No, ma'am.

Q What's different about it?

A Well, I believe the tractor tires were on it the—November 2nd.

MR. HICKEY: Would you repeat that answer?

THE WITNESS: I believe the tractor tires were on it November 2nd.

Q (By Miss Stump) What leads you to believe that?

A Well, because when I was there on November 2nd, I was looking for a tractor with tractor tires because that was

the focus of my attention. I believe that if there had been a tractor sitting out there without tires on it, I believe it would have been very noticeable.

Any discrepancy between the affidavit and Qualls' testimony, if indeed one exists, cannot begin to approach the standards for reckless or intentional misrepresentation as expressed by this court. *United States v. Lyon,* 567 F.2d 777, 782 (8th Cir. 1977), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978). We agree with the trial court that the affidavit was sufficient to justify the issuance of the search warrant.

### C. Sufficiency of the Evidence

■ Ventling also complains that the evidence was purely circumstantial and is insufficient to support a conviction, urging that the government failed to establish when the blockade was erected, that Ventling was responsible, and that the roads in question were within the National Forest System for purposes of 36 C.F.R. 261.

Upon review the government is entitled to the benefit of all reasonable inferences from the evidence, and any conflicts in the testimony are to be resolved in favor of the verdict. *United States v. Steffen,* 641 F.2d 591, 597 (8th Cir.), *cert. denied,* 452 U.S. 943, 101 S.Ct. 3091, 69 L.Ed.2d 959 (1981).

Lee Sutton, a United States Forest Service employee, testified that on November 1, 1980, he discovered blockades on two roads which had been accepted into the United States Forest System. The blockades were composed of several large limestone boulders and appeared to have been recently constructed. Sutton estimated that they had been constructed within a week to ten days. There was testimony indicating that tractor tracks of a particular pattern were found between the two blockade sites and the Ventling residence. It was shown at trial that the Ventling residence was the closest residence in the area. Tracks which appeared to be made by the same tractor were found in the Ventling driveway and yard. There was testimony that no tracks were found other than those running between the blockades and between the last blockade and Ventling's driveway.

The tractor found in the Ventling yard, well within view from the driveway and the residence, bore deposits of limestone on the backhoe and front-end loader which appeared consistent with the composition of the rocks used in the blockade. Paint scrapings taken from the rocks appeared to match the paint on Ventling's tractor. Motive for blocking the roads was also established via testimony regarding Ventling's efforts to stop construction of the roads. The record here reveals sufficient circumstantial evidence establishing Ventling as the individual who constructed the blockades.

### D. Newly Discovered Evidence

The magistrate denied Ventling's motion for a new trial. The denial was upheld by the district court on the ground that the alleged newly discovered evidence was insufficient to satisfy the requirements for granting a new trial. Ventling contends that the evidence, the testimony of James Dahlberg, would show that the roadblocks could have been erected prior to October 22, 1980. Ventling states that the reason for not calling Mr. Dahlberg at trial was because he believed he was charged with an offense which occurred on November 1, 1980, rather than during the end of October. This contention seems frivolous.

■ There are five prerequisites which must ordinarily be met to justify the grant of a new trial on the ground of newly discovered evidence:

(1) the evidence must be in fact newly discovered, that is, discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied upon must not be merely cumulative or impeaching; (4) it must be material to the issues involved, and (5) it must be of such nature that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*United States v. McColgin,* 535 F.2d 471, 476 (8th Cir.), *cert. denied,* 429 U.S. 853, 97

S.Ct. 145, 50 L.Ed.2d 128 (1976). The evidence here clearly does not comport with the requirements for a trial on the basis of newly discovered evidence.

Affirmed.