UNITED STATES of America, Appellee,

v.

Anthony D. DANIELE, Appellant.

No. 90–1577.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1990.

Decided April 23, 1991.

Donald L. Wolff, St. Louis, for appellant.

Michael Reap, Asst. U.S. Atty., St. Louis, for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOODS,[*] District Judge.

BRIGHT, Senior Circuit Judge.

Anthony Daniele appeals the district court orders denying his motion for a new trial and reducing his sentence by only one year. Except for an order of restitution, which we deem Daniele to have completely satisfied, we affirm.

## I. BACKGROUND

On June 9, 1988, a jury convicted Daniele of ten counts of mail fraud, four counts of extortion and one count of conspiracy. Daniele's convictions arose out of a scheme to direct the brokerage of the Police and Firefighters Pension Funds in St. Louis, Missouri (the Pension Funds) in return for unlawful kickbacks. Donald Anton, a prominent lawyer, orchestrated the scheme from 1982 until its unveiling in 1987. Daniele, a former police officer, chaired the Police Pension Fund Board from 1985 to 1987. The Government indicted several persons, all of whom pled guilty except Daniele. The case received considerable publicity in the St. Louis area.

Upon Daniele's conviction, the district court imposed an eight-year sentence and ordered him to pay $200,000 in restitution to the Pension Funds. On appeal, this court affirmed both Daniele's convictions and sentence. *United States v. Daniele,*

[*] The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

886 F.2d 1046, 1057 (8th Cir.1989). The facts are set out more fully therein.

After the criminal trial, the Police Retirement System of St. Louis filed a civil lawsuit against Daniele, Anton and other implicated parties for mismanaging the Pension Funds. *Police Retirement Sys. v. Midwest Inv. Advisory Servs.*, No. 87–2076 C(5) (E.D.Mo.1989). On August 2, 1989, the civil jury returned a verdict absolving Daniéle of liability for losses to the Pension Funds. Upon obtaining a favorable civil verdict, Daniele moved for a new criminal trial based on newly discovered evidence. *See* Fed.R.Crim.P. 33. Daniele simultaneously submitted a motion for reduction in sentence raising several additional equitable factors. *See* Fed.R.Crim.P. 35(b).[1] The district court denied Daniele's new trial motion, but granted a one-year reduction in sentence, from eight years imprisonment to seven years. The district court also reduced Daniele's liability for restitution from $200,000 to $133,000. This appeal followed.

## II. DISCUSSION

### A. New Trial Motion

■ Daniele argues that various information, which surfaced during the civil proceedings, entitles him to a new criminal trial on the grounds of newly discovered evidence. We disagree.

■ To prevail on his new trial motion, Daniele must put forth material evidence, not merely cumulative or impeaching, that came to light subsequent to trial and would probably produce an acquittal. *United States v. Massa*, 804 F.2d 1020, 1022 (8th Cir.1986) (quoting *United States v. Ventling*, 678 F.2d 63, 67 (8th Cir.1982)), *cert. denied*, 488 U.S. 973, 109 S.Ct. 508, 102 L.Ed.2d 543 (1988). Additionally, the court must be able to infer diligence from the facts alleged. *Id.* Only one of Daniele's grounds for a new trial requires individualized discussion.

During the civil trial, codefendant Anton represented himself. He successfully resisted testifying on fifth amendment grounds, as he had during the criminal proceeding.[2] The instant controversy revolves around certain remarks Anton made during his closing argument, which we reproduce below:

> Over there sits Tony Danielle [sic].
>
> He is in this case, in count 14.
>
> I am not in that count.
>
> I am in Counts 16 and 20, which are the counts making allegations concerning me.
>
> This is the first time anywhere that anyone officially has publically [sic] acknowledged that Tony Danielle [sic] and I did not conspire to do anything.
>
> I had no participation in his election as a trustee.
>
> You heard that before.
>
> There was no agreement that he hire nor fire Guaranty Trust Company, nor Midwest Investment.
>
> There was no agreement between Tony and I that he use only I.M. [sic] Simon as a broker.
>
> I agreed to circulate his resume for promotion, since I sincerely believed that he had an excellent police record, and deserved to be promoted.
>
> And I gave it to anyone that I thought would listen.
>
> Unfortunately, he was not promoted.
>
> Neither he, nor I had any promises or agreements that I would give him any money for doing anything, or he would give me any money for doing anything.
>
> In my opinion, he should not be liable in this case; and he should not even have been sued in this case.

Joint Appendix at 111–12.

The district court found that the above statements were not evidence. Given their context, we agree that Anton's comments

---

**1.** This version of Rule 35(b) applies only to crimes committed before November 1, 1987.

**2.** We remain unclear why Daniele failed to challenge Anton's invocation of the privilege against self-incrimination during both the criminal and civil proceedings. Anton's guilty plea, which predated both trials, may have waived this right—at least as to matters that the guilty plea resolved.

can be fairly characterized as purely legal arguments based on the evidence at trial, and nothing more. Significantly, Anton prefaced his closing argument with the following:

> The fact that I did plead guilty, the fact that I did take the Fifth Amendment possibly might cause you not to believe what I have to say in any event.
>
> *So, consequently, I am asking you to look at the other evidence in this case.*
>
> Look at what the other witnesses have said.
>
> Look at what the other defendants have produced.
>
> And then judge me by the evidence that they have produced.

Joint Appendix at 108–09 (emphasis added). Moreover, we think it highly improbable that Anton, who heretofore steadfastly refused to make any statement, would have chosen to testify *sua sponte* during closing arguments.

We have little difficulty rejecting Daniele's remaining contentions. We acknowledge the civil verdict in Daniele's favor, but cannot accord it much significance because Daniele's new trial motion failed to specify the civil charges against him, their elements, or the instructions and verdict form given to the civil jury. Without such information, we cannot begin to ascertain whether evidentiary variations between the two trials seemingly caused the different verdicts.

Moreover, we agree with the district court that much of the proffered "new" evidence was merely cumulative or impeaching. *See Massa,* 804 F.2d at 1023–24. Additionally, Daniele failed to show that a reasonably diligent pretrial investigation would not have uncovered the evidence. *See United States v. Bishop,* 825 F.2d 1278, 1284–85 (8th Cir.1987). Under these circumstances, we see no abuse of discretion in the district court's denial of Daniele's new trial motion.

**B. Motion for Reduction in Sentence**

■ Daniele argues, perhaps with good reason, that his circumstances could have supported a sentence reduction of considerably more than one year. Nevertheless, we believe the district court acted within its discretion in granting only a one-year decrease. The record discloses, among other things, that Daniele, while on bond pending appeal, took a trial witness hostage at gunpoint. Presented with such facts, we cannot say that Daniele's sentence was greatly excessive under traditional concepts of justice or manifestly disproportionate to the crime or criminal. *See Massa,* 804 F.2d at 1025.

■ After oral argument, however, we do feel compelled to take issue with the district court's order modifying restitution. In total, the Pension Funds lost $333,163.06 because of the kickback scheme. The judgment of conviction ordered Daniele to make restitution as follows: "Defendant Anthony D. Daniele shall be held jointly and severally liable with defendant Donald C. Anton for the sum of $200,000.00; provided, however, that total restitution for the two funds shall not exceed $333,163.06." Anton subsequently paid $200,000 in restitution. Daniele argues that Anton's payment satisfies his obligation to the Pension Funds. We agree.

The district court ordered three codefendants besides Anton and Daniele to make restitution. These additional amounts totalled $142,035.96, and left approximately $200,000 for appropriation between Anton and Daniele.[3] Considering this background, we think the restitution order admits only one interpretation: that Daniele's and Anton's combined liability amounted to $200,000, and no more.[4] We therefore deem Daniele's obligation to the Pension Funds satisfied.

---

**3.** The court ordered codefendants Charles Swanger, Louis Monti and Walter Klein to make restitution payments of $47,464.47, $15,821.49 and $78,750.00, respectively. Transcript of Sentencing at 10, 14, 21.

**4.** The joint restitution order for Anton and Daniele makes sense in view of the Government's theory at trial that Daniele entered the scheme not for monetary gain, but to obtain Anton's assistance in obtaining a promotion.

## III. CONCLUSION

We affirm the district court orders denying Daniele's new trial motion and reducing Daniele's sentence from eight to seven years. However, we reverse with respect to the modified order of restitution. On remand, the district court should enter an appropriate order extinguishing Daniele's obligation to make restitution to the Pension Funds.